IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| TARIK YAMADIN, | ) | |
|---|---|---|
| Petitioner, | ) | Civil Action No. 17-66 Erie |
| | ) | |
| v. | ) | Judge Nora Barry Fischer |
| | ) | Magistrate Judge Susan Paradise Baxter |
| RAFAEL ZUNIGA, | ) | |
| Warden, FCI McKean, | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the petition for a writ of habeas corpus filed by the Petitioner, Tarik Yamadin, be denied.

### II. REPORT .

#### A. Relevant Background

The Petitioner is a federal inmate incarcerated at the Federal Correctional Institution McKean, which is located within the territorial boundaries of this Court. In 2005, the Court of Common Pleas of Delaware County sentenced him to 5-10 years of imprisonment for voluntary manslaughter. (Resp's Ex. 2, Attach. 2e). He was released on parole in January 2011. The following year, on January 15, 2012, he was arrested in Pennsylvania by members of the Chester Police Department and charged with carrying a firearm without a license and providing false information to the police. (Resp's Ex. 2, ¶ 4). That state criminal case was docketed in the Court of Common Pleas of Delaware County at docket number CR-13-2012. (Id.) On the date he was arrested, the Pennsylvania Board of Probation and Parole (the "Parole Board") issued a Warrant to Commit and Detain the Petitioner for a parole violation. (Id.) He was held in custody in the Delaware County Prison, George W. Hill Correctional Facility.

1

Because local, non-federal authorities arrested the Petitioner first, he was in the "primary custody" (sometimes referred to as "primary jurisdiction") of the Commonwealth of Pennsylvania. The "primary custody" doctrine developed to provide different sovereigns (in this case the state and the federal governments) with an orderly method by which to prosecute and incarcerate an individual who has violated each sovereign's laws. Ponzi v. Fessenden, 258 U.S. 254 (1922). See, e.g., Bowman v. Wilson, 672 F.2d 1145, 1153-54 (3d Cir. 1982); George v. Longley, 463 F.App'x 136, 138 n.4 (3d Cir. 2012) (per curiam); Elwell v. Fisher, 716 F.3d 477 (8th Cir. 2013). In relevant part, the doctrine provides that the sovereign that first arrests an individual has primary custody over him. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him. The sovereign with primary custody is entitled to have the individual serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction, regardless of the chronological order of sentence imposition. See, e.g., Bowman, 672 F.2d at 1153-54. Primary custody remains vested in the sovereign that first arrests the individual until its sentence expires and it releases the inmate, or until it relinquishes its priority through some other act, such as granting bail, dismissing the charges, or releasing the individual on parole. See, e.g., George, 463 F.App'x at 138 n.4.

On March 1, 2012, the Parole Board issued a decision to recommit the Petitioner as a technical parole violator to serve 12 months of backtime. (Resp's Ex. 2, Attach. 2g). The Petitioner's parole revocation hearing, at which the Parole Board would determine whether he was also a convicted parole violator, would be held after the resolution of the new criminal charges pending against him.

The grand jury for the Eastern District of Pennsylvania subsequently returned a one-count Indictment against the Petitioner for violating 18 U.S.C. § 922(g)(1), felon in possession of a firearm. On September 12, 2012, a federal arrest warrant was issued by the United States District Court for the Eastern District of Pennsylvania. (Resp's Ex. 2, ¶ 5). It also issued a writ of habeas corpus

ad prosequendum directing the warden of the state correctional facility at which the Petitioner was incarcerated to produce the Petitioner for prosecution in federal court. Pursuant to the writ's authority, the Petitioner was removed from the physical custody of state authorities on October 17, 2012, by the United States Marshals Service and transported to and from federal court for judicial proceedings. (Resp's Ex. 2, ¶ 6, and Attach. 2c). Although the Petitioner was temporarily transferred to the physical custody of federal authorities, the Commonwealth maintained primary custody over him. That is because a prisoner detained pursuant to a writ of habeas corpus ad prosequendum remains in the primary custody of the sending sovereign unless and until it relinquishes jurisdiction over him. See, e.g., Ruggiano v. Reish, 307 F.3d 121, 125 n.1 (3d Cir. 2002), superseded on other grounds by U.S.S.G. § 5G1.3(c) app. note 3(E) (2003). See also Elwell, 716 F.3d at 482 ("When the United States obtained physical custody of Elwell based upon the writ of habeas corpus ad prosequendum, the transfer of physical control over Elwell's custody from Iowa to the United States did not terminate Iowa's primary jurisdiction."). The receiving sovereign–in this case, the federal government–is considered simply to be "borrowing" the prisoner from the sending sovereign for the purposes of indicting, arraigning, trying, and/or sentencing him. Id.

On November 5, 2012, the state criminal charges pending against the Petitioner in the Court of Common Pleas of Delaware County at docket number CR-13-2012 were *nolle prossed*. (Resp's Ex. 2, ¶ 9). The Commonwealth did not relinquish its primary custody over him because he was a technical parole violator and also because the Parole Board would not decide the outstanding matter of whether he was a convicted parole violator until his federal criminal proceeding concluded.

The Petitioner pleaded guilty to his federal charge, and on June 20, 2013, the federal district court judge sentenced him to 78 months of imprisonment. (Resp's Ex. 2, ¶ 7 and Attach. 2d). The federal Judgment was silent regarding whether the federal sentence was to be served concurrent with or

3

consecutive to whatever state sentence he was serving or that might be imposed following his parole revocation hearing. (Id.)

The United States Marshals Service subsequently returned the Petitioner to state authorities in satisfaction of the writ of habeas corpus ad prosequendum. The federal Judgment was filed as a detainer. (Resp's Ex. 2, ¶¶ 7-8).

On January 17, 2014, following a revocation hearing, the Parole Board issued a decision that the Petitioner was a convicted parole violation and, therefore, had to serve his unexpired state term of imprisonment (two years, five months, and 28 days). (Resp's Ex. 2, Attach 2g). On April 21, 2016, the Petitioner completed service of his state sentence and state authorities released him to federal authorities pursuant to the federal detainer. (Resp's Ex. 2, ¶ 10).

The Bureau of Prisons (the "Bureau" or the "BOP") is the agency responsible for implementing and applying federal law concerning the computation of federal sentences, United States v. Wilson, 503 U.S. 329 (1992). Pursuant to 18 U.S.C. § 3584(a), the BOP calculated the Petitioner's federal sentence as consecutive to his state sentence. This means that it has refused to give him a retroactive concurrent designation (discussed below), which would have allowed the state prison to be the place where he began service of his federal sentence. Pursuant to 18 U.S.C. § 3585(a), the BOP has calculated the Petitioner's federal sentence to have commenced on the day the state authorities released him to the federal detainer (April 21, 2016). The BOP also has determined that the Petitioner is entitled to 353 days of prior custody credit (which could also be described as pre-commencement credit) pursuant to 18 U.S.C. § 3585(b) for the time he spent in official detention from November 6, 2012, through October 24, 2013, because that time was not credited against his state sentence. (Resp's Ex. 2, ¶ 14).

The Petitioner challenged the way the BOP calculated his federal sentence through the available administrative remedy process. When he did not receive all the sentencing credit he sought through that

4

process, he filed the instant petition for a writ of habeas corpus with this Court. (ECF No. 4). The Respondent filed the answer (ECF No. 7). The Petitioner did not file a reply. LCvR 2241.D.2. ("Although not required, the petitioner may file a Reply (also known as "a Traverse") within 30 days of the date the respondent files its Response.")

### B.    Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). McGee v. Martinez, 627 F.3d 933, 935 (3d Cir. 2010). 28 U.S.C. § 2241 "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence," McGee, 627 F.3d at 935, such as, for example, the way in which the BOP is computing his sentence. See, e.g., Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1990). Section 2241 habeas actions are filed in the federal district court where the prisoner is incarcerated. In this case, the Petitioner is challenging the way in which the BOP has calculated his federal sentence. Therefore, this Court has jurisdiction under § 2241 to hear the Petitioner's challenge to the BOP's calculation of his federal sentence.

### C.    Discussion

A federal habeas court may only extend a writ of habeas corpus to a federal inmate if he demonstrates that "[h]e is in custody in violation of the Constitution or laws of the United States[.]" 28 U.S.C. § 2241(c)(3). The following statutes are relevant to the evaluation of the Petitioner's contention that the BOP erred in computing his federal sentence: 18 U.S.C. § 3584(a), which governs a federal sentencing court's authority to order that a federal sentence be served concurrently with a state sentence; 18 U.S.C. § 3585(a), which governs the date upon which a federal sentence commences; and

5

18 U.S.C. § 3585(b), which governs the amount of prior custody credit that an inmate may receive. The BOP's policies regarding sentence computation are set forth in Program Statement 5880.28, Sentence Computation Manual ("PS 5880.28"). Also relevant to this case is Program Statement 5160.05, Designation of State Institution for Service of Federal Sentence ("PS 5160.05"). The BOP policies at issue in this case are not published in any federal regulation, and thus are not subject to public notice and comment before adoption. Although they are not entitled to the deference described in Chevron U.S.A. v. National Resources Defense Council, 467 U.S. 837 (1984), they are entitled to "some deference" from this Court so long as they set forth "a permissible construction of" the statutes at issue. Blood v. Bledsoe, 648 F.3d 203, 207-08 (3d Cir. 2011) (per curiam) (citing Reno v. Koray, 515 U.S. 50, 61 (1995)).

### 1. The determination of whether a federal sentence is concurrent with, or consecutive to, a state sentence

#### (a) Statutory and policy background

In determining whether the Petitioner is entitled to any habeas relief, the Court must first examine whether the BOP violated federal law in computing his federal sentence as consecutive to his state sentences. 18 U.S.C. § 3584(a) provides, in relevant part:

> [I]f a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively.… *Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently*.

(Emphasis added). See also Sester v. United States, 566 U.S. 231 (2013) (§ 3584(a) authorizes federal sentencing courts to direct sentences to run concurrently or consecutively with other sentences, whether such sentences are imposed or have yet to be imposed).

6

In applying § 3584(a), the BOP presumes that federal and state sentences are to be served consecutively unless the federal sentencing court orders that the sentences are to be served concurrently. See PS 5880.28, Chapt. 1, Pages 31-33; PS 5160.05, Pages 2-7. In this case, the federal district court that imposed the Petitioner's sentence did not order that his federal sentence was to be served concurrent with any state sentence. Therefore, the BOP did not initially consider his federal sentence to run concurrent with his state sentence.

Importantly, however, once the Petitioner challenged the way in which the BOP calculated his federal sentence, the BOP considered, in accordance with its policies, whether it should exercise its discretion and grant the Petitioner a retroactive concurrent designation pursuant to § 3621(b). In Barden, the United States Court of Appeals for the Third Circuit discussed the BOP's authority to effectuate the service of concurrent federal and state sentences in circumstances when the intent of the federal sentencing court or the goals of the criminal justice system would make the exercise of that authority appropriate. See also PS 5160.05, Pages 5-7. An inmate is permitted to request that the BOP retroactively designate the state institution as the correctional institution where he began service of his federal sentence pursuant to its authority under 18 U.S.C. § 3621(b), which in effect amounts to the imposition of a retroactive concurrent federal sentence. Barden, 921 F.2d at 478-83; PS 5160.05, Pages 5-7.

Although the BOP must consider the inmate's request for concurrent service of sentences, it is not obligated to grant the request. Id. at 478 n.4 ("We recognize that neither the federal courts nor the Bureau are bound in any way by the state court's direction that the state and federal sentences run concurrently."); PS 5160.05, Page 6 ("there is no obligation under Barden for the Bureau to grant the request by designating a state institution retroactively as the place to serve the federal sentence."). In making its decision, the BOP will review the federal sentencing court's Judgment and Commitment

Order, the state sentence data records, and any other pertinent information relating to the federal and state sentences. PS 5160.05, Pages 5-7.

### (b) The BOP did not abuse its discretion in declining to grant the Petitioner a retroactive concurrent designation

After the Petitioner challenged the way the BOP calculated his federal sentence, the BOP wrote a letter to the federal district court judge who sentenced him. It explained how it calculated the Petitioner's federal sentence and inquired whether it was the judge's intention that the Petitioner serve his federal sentence concurrent with his state sentence. (Resp's Ex. 2, Attach. 2i). The BOP wrote:

> [The Petitioner] has requested that his federal sentence be served concurrently with the state term, which would be accomplished by the Bureau designating the state institution for service of his federal sentence…
> Such a retroactive designation is made if the federal sentencing Court indicates the federal term is to be concurrent with the state term, or if the federal sentencing Court does not state its intention, such designation may be completed after the review of all factors under Title 18 U.S.C. § 3621(b).
> The Bureau strives to administer sentences in accordance with federal statutes, Bureau policy, and the intent of the sentencing Court. It is the Bureau's preference that the federal sentencing Court state its position with respect to a retroactive designation….
> Should the Court indicate the sentence is to run concurrent with the state term, the Bureau will commence the sentence on the date of imposition [June 20, 2013], which will result in [the Petitioner's] release from custody on or about July 6, 2018. Should the Court indicate the term is to run consecutive to the state term, he will continue to a current projected release date of December 31, 2020.

(Id.)

The federal district court judge responded to the BOP in a letter dated February 17, 2017. He wrote:

> I have reviewed the June 20, 2013 "J and C" concerning [the Petitioner] as well as the transcripts of the sentencing hearing of June 20, 2013 (particularly at N.T. 37).
> The most accurate response to your inquiry is that I have taken no specific position *vis a vis* the relationship between the two sentences. Although I had the opportunity at the sentencing to make sure the sentences were consecutive if that had been my over-arching intention, I did not take such an opportunity. However, my greatest concern was to make sure [the Petitioner] understood he had committed two infractions,

8

> not simply one, so that if there ended up being an imposition of consecutive sentences he would have a basis for understanding why.
>
> Strictly speaking, I had no "intention" on the point explicitly, and I do not have one now. I am satisfied to leave the matter in the hands of the Bureau to attend to in a manner consistent with similar situations.

(Resp's Ex. 2, Attach. 2j).

The BOP then conducted a Barden review to determine whether to grant the Petitioner a retroactive concurrent designation. The five factors set forth in § 3621(b) were considered with respect to the Petitioner's particular circumstances. Those factors are: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence concerning the purposes for which the sentence to imprisonment was determined to be warranted or recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission. After its evaluation, the BOP determined that the Petitioner was not appropriate for a retroactive designation. (Resp's Ex. 2, Attach. 2k). The BOP determined that the following factors weighed against giving the Petitioner a retroactive concurrent designation: the federal and state charges were not related; his criminal history; his prison disciplinary record; and, the response from the federal district court judge that sentenced him. (Id.)

This Court cannot conclude that the BOP's decision was an abuse of its discretion. It was in accordance with the federal sentencing statutes and applicable agency policy, PS 5160.05, Pages 5-7, and there is no basis for this Court to disturb it. See Barden, 921 F.2d at 484.

### 2. Calculation of the date upon which a federal sentence commences

18 U.S.C. § 3585(a) governs the date a federal sentence commences. It provides:

(a) Commencement of sentence. – A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives

9

> voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

18 U.S.C. § 3585(a).

The BOP, and not the federal sentencing court, determines the date upon which a federal sentence commences. See, e.g., Ruggiano, 307 F.3d at 126. The BOP will not commence a sentence earlier than the date it is imposed, even if made concurrent with a sentence already being served. PS 5880.28, Chapt. 1, Page 13 ("In no case can a federal sentence of imprisonment commence earlier than the date on which it is imposed."). See, e.g., Rashid v. Quintana, 372 F.App'x 260, 262 (3d Cir. 2010) (per curiam) ("a federal sentence cannot begin to run earlier than on the date on which it is imposed.") (citing Unites States v. Labeille-Soto, 163 F.3d 93, 98 (2d Cir. 1998), which stated: "We see nothing in [§ 3585(a)] to indicate that the court is permitted to order that the sentence be deemed to have commenced on an earlier date. Indeed, the determination of the precise date on which a sentence begins appears to have been intended to be a ministerial decision that depends on the timing of the defendant's arrival at the appropriate place with respect to the sentence that is to be served, and we have held that after a defendant is sentenced, it falls to the BOP, not the district judge, to determine when a sentence is deemed to commence[.]" (internal quotations and brackets omitted)).

When an inmate is only facing service of a federal sentence, the application of § 3585(a) is straightforward. The BOP will designate the inmate to a federal detention facility and it will calculate the federal sentence to have commenced on the date it was imposed. PS 5880.28, Chapt. 1, Page 12. Oftentimes, however, as in the instant case, an inmate is subject to multiple sentences, *e.g.*, at the time his federal sentence is imposed he is or will soon be subject to a state sentence. In that case, the federal and state governments must resolve where and/or in what order the inmate will serve his multiple sentences. As discussed above, at common law the "primary custody" doctrine developed to assist the

10

sovereigns in making these determinations and to provide an orderly method by which to prosecute and incarcerate an individual that violated the law of more than one sovereign. Once again, the primary custody doctrine provides that the sovereign that first arrests an individual has primary custody over him. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him. The sovereign with primary custody is entitled to have the individual serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction. See, e.g., Bowman, 672 F.2d at 1153-54.

The BOP has incorporated the common law primary custody doctrine into its policies, which provide:

1. If the federal government has primary custody of an inmate on the date his federal sentence is imposed, it is entitled to have that inmate serve his federal sentence upon imposition. In such a case, the BOP will designate the inmate to a federal detention facility for service of the federal sentence and will calculate that sentence to have commenced on the date the federal sentencing court imposed it, even if at that same time the inmate is serving a concurrent state sentence. PS 5880.28, Chapt. 1, Pages 12-13.

2. If the inmate is in the primary custody of the state and the federal sentencing court orders that he serve his federal sentence *concurrent* with any state sentence, the BOP will return physical custody of the inmate to the state, designate the state facility as the initial place of service of the federal sentence pursuant to its authority under 18 U.S.C. § 3621(b), and calculate his federal sentence to have commenced on the date the federal court imposed it. PS 5880.28, Chapt. 1, Page 13, 32A-33; PS 5160.05, Pages 2-12.

3. If an inmate is in the primary custody of the state when his federal sentence is imposed and if his federal sentence is *consecutive to* any state sentence, the inmate will be returned to the state after federal sentencing. The BOP will commence the inmate's federal sentence under § 3585(a) when the state relinquishes its priority and releases him to federal custody. PS 5880.28, Chapt. 1, Pages 12-13, 31-33; see also PS 5160.05, Pages 2-12.

The third scenario is what has occurred in the Petitioner's case. He was in the primary custody of the Commonwealth of Pennsylvania on the date his federal sentence was imposed. Because his federal sentence is consecutive to his state sentence, the BOP calculated his federal sentence to have

11

commenced under § 3585(a) on April 21, 2016, the date the Commonwealth released him to the federal detainer. (Resp's Ex. 2, ¶ 17 and Attach. 2h at 2). There is no basis for the Court to disturb the BOP's determination. The policies it applied to the Petitioner are a permissible construction of § 3585(a).

### 3. Calculation of prior custody credit under § 3585(b)

Section 3585(b) governs the amount of credit an inmate is entitled to receive for time served in official detention prior to the commencement of his federal sentence. It provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –
>
> (1) as a result of the offense for which the sentence was imposed; or
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> *That has not been credited against another sentence.*

(Emphasis added).

The intent of the last clause of § 3585(b) is to prohibit double sentencing credit situations. Wilson, 503 U.S. at 337 (explaining that with the enactment of § 3585(b), "Congress made it clear that a defendant could not receive a double credit for his detention time."). The BOP may not grant prior custody credit under § 3585(b) for time that has been credited against another sentence. See, e.g., Vega v. United States, 493 F.3d 310, 314 (3d Cir. 2007).

The BOP has determined that the Petitioner is entitled to 353 days of prior custody credit under § 3585(b). This credit accounts for all the time that the Petitioner served from November 6, 2012, through October 24, 2013, that was not credited against his state sentence. (Resp's Ex. 2, ¶ 14 and Attach. 2h at 2). The BOP cannot give the Petitioner any additional credit under § 3585(b) for the time he spent in official detention during the relevant time period because all of that other time was credited

12

against a state sentence. See, e.g., Vega, 493 F.3d at 314 (the BOP did not err when it disallowed credit under § 3585(b) because the time at issue had been credited against the petitioner's state sentence).

### III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that the petition for a writ of habeas corpus be denied.[1]

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties must seek review by the district court by filing objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Dated:  September 28, 2017

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

cc:     The Honorable Nora Barry Fischer
        United States District Judge

---

[1]     28 U.S.C. § 2253 sets forth the standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000), abrogated on other grounds by Gonzalez v. Thaler, 565 U.S. 134 (2012).